E. H. McCONNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3211. Promulgated February 10, 1927.

1. Deduction alleged to represent bad debts in the nature of uncollectible balances on merchandise accounts allowed.

2. Discounts to customers on account of defective merchandise allowed.

3. Loss on account of loan to a debtor who became insolvent in the taxable year allowed.

4. Loss on account of death of live stock purchased by petitioner allowed.

*Don R. Hutchinson, Esq.,* and *Edwin C. Dutton, Esq.,* for the petitioner.
*J. K. Moyer, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income taxes for the years 1918 and 1919 in amounts not disclosed by the record. The controversy arises from the disallowance of a deduction of $746.44 made by the petitioner from his income for the year 1918, on account of bad debts, and of deductions of $13,076.30 and $1,000, respectively, on account of bad debts and loss of live stock in the year 1919.

### FINDINGS OF FACT.

The petitioner is an individual engaged in selling furniture on the installment plan in the City of Memphis, Tenn., and in conducting a farm in Mississippi. He commenced the furniture business in 1914. His gross sales for 1918 amounted to $302,772.77, and, for 1919, $604,318.69.

The furniture business was all, or practically all, conducted on the installment basis. Each purchaser entered into a contract prepared on a printed form and signed in duplicate. Payments for the goods were required to be made weekly, semi-monthly, or monthly, as the case might be. One copy of the contract was held by the proprietor and the other by the purchaser. Title to the goods did not pass until payment was made in full, but the goods were immediately delivered to the purchaser. The contract was handed to

the bookkeeper, who opened a loose-leaf single entry ledger account in which the purchaser was charged with the full price of the goods and credited with the initial payment thereon, and subsequently all payments on account, discounts allowed for various reasons, and commissions for bringing in new customers, were credited to the purchaser at the dates when made.

In case of default in payment, an account was shortly thereafter put into the hands of a collector, who visited the purchaser, if he or she could be found, and made collection, if possible. If the collector failed to secure payment, the accounts were put into the hands of attorneys for collection, if deemed advisable.

Toward the close of the year, in November, or the latter part of October, the proprietor went through the books and removed therefrom the pages containing such accounts as he could not collect and placed them in a bad debt ledger, and as soon thereafter as practicable, the bookkeeper ascertained the amounts unpaid and credited them to loss and gain.

The petitioner computed his income for the taxable years by taking his gross sales as a basis. From this he deducted the cost of merchandise, with due consideration of the effect of opening and closing inventories, and thereby arrived at gross profits. From the amount of gross income so determined he then deducted expenses, discounts and uncollectible balances on customers' accounts.

In his income-tax returns for the years 1918 and 1919, the petitioner deducted from his gross profit for each year the respective amounts of $746.44 and $13,076.30, as bad debts ascertained to be worthless and charged off in the taxable years. Upon audit of such returns the Commissioner computed the petitioner's income on the accrual basis, added the amounts so deducted to gross income, and determined the deficiencies here at issue.

The amounts deducted from gross income by the petitioner, and disallowed by the Commissioner, consisted of balances due on accounts which the petitioner had ascertained to be worthless, discounts allowed to purchasers on account of inferior or damaged goods, and an amount of $2,500 loaned by the petitioner to one William Garrett, who was engaged in the soft drink business. All attempts to collect this loan resulted in failure. Garrett became insolvent, and at December, 1919, had no assets.

In 1919 the petitioner purchased two mules, paying $50 for one and $100 for the other, one horse for $100, and 75 hogs at an average cost of $10 each, and sent them to his farm in Mississippi, where the manager took charge of them. Later in the year there was an epidemic of hog cholera in that section, which carried off all his hogs. The mules and horse died before the close of the year,

The loss sustained from the death of these animals was not covered by insurance.

OPINION.

LANSDON : The petitioner claims deduction from his gross income for each of the years 1918 and 1919 in the respective amounts of $746.44 and $13,076.30, as bad debts ascertained to be worthless and charged off in such years. The record discloses that the amounts in question included uncollectible balances on installment accounts with purchasers, discounts allowed to customers on account of inferior or damaged merchandise, and the amount of $2,500, representing a cash loan made to a man who became insolvent during the year 1919.

The evidence is conclusive that all the amounts included in the petitioner's claim are proper deductions from gross income. We are satisfied with the proof that debts so included were ascertained to be worthless and charged off during the taxable years. The discounts for inferior or damaged merchandise were ordinary business expenses not otherwise or elsewhere deducted from income. The loan was made in cash, and at the end of the year the borrower was insolvent, and without assets of any description.

The only question that can arise in connection with the allowance of these amounts is whether that part of the total which represents uncollectible accounts and discounts to purchasers was ever charged into income. The petitioner testified that he used the amount of gross sales for any year as the starting point for computing his profits from operations for such year, and that from such amount he deducted cost of merchandise, expenses of operations, including discounts and commissions, and uncollectible accounts. This method indicates that the petitioner kept his accounts and made his income-tax returns on the accrual basis. We are confirmed in this conclusion by the fact that upon audit of the returns for the taxable years the Commissioner employed the accrual basis in computing the income as to which he asserted the deficiencies here involved. We are convinced that the petitioner kept his books and made his income-tax returns on the accrual basis, and that the amounts claimed as deductions on account of bad debts, discounts to customers, and loans, were all included in gross income, and that the petitioner is entitled to deduct such amounts as bad debts and expenses.

The evidence that the animals in question were purchased by the petitioner, their cost, and that all died in the taxable year 1919, is clear and uncontradicted. The cost of such animals in the amount of $1,000 is a proper deduction for income purposes from the petitioner's gross income for the year 1919.

*Judgment will be entered for the petitioner.*

MURDOCK, dissenting: I dissent from the above opinion in so far as it allows a deduction for debts ascertained to be worthless and charged off during the taxable years, representing alleged uncollectible balances on merchandise accounts.    There is nothing in the findings of fact to show that the accounts were " ascertained to be worthless " as this Board has interpreted that phrase.    We do not know the financial condition of the creditors, nor any other facts upon which the ascertainment of worthlessness could be based.    The goods might have been recoverable and something might have been realized from their sale.    Therefore, I am of the opinion that the petitioner has failed to prove the incorrectness of the Commissioner's determination in regard to this item.